## THE AMERICAN INSURANCE COMPANY v. FISK.

Wherever the remedy at law is doubtful and difficult, a court of chancery has jurisdiction.[1]

The act of Congress of March 3d, 1823, does not give exclusive jurisdiction of salvage and admiralty causes to the superior courts of the territory of Florida, organized by that act; and an act of the legislature of that territory, creating a wrecker's court, is valid.

Where such court in making an award, made an order not within their jurisdiction, it was held that this excess of jurisdiction only rendered the award void *pro tanto*.

A *bona fide* purchaser of property at a judicial sale, under the order of a court having jurisdiction of the subject matter is always protected, where the proceedings are only voidable, not void.

And courts ought to be liberal in sustaining the regularity of such sales, where there exists no doubt as to the fairness and official nature of the transaction.

The court are likewise protected, whose proceedings have been irregular, where they have jurisdiction of the subject matter.

May 29th.

IN February, 1825, the ship Point a' Petre of Bordeaux, laden with cotton and nails, was lost on Carey's Fort reef, off the coast of Florida. Of the cotton on board, 536 bales were saved from the wreck by other vessels, and carried into Key West, where it was sold under an award of a wrecker's court, organized at that place; and 76 per cent. of the proceeds was awarded to the salvors. Fisk is a *bona fide* purchaser of 140 bales of cotton thus sold.

[1] *Whittock* v. *Duffield,* 2 Edw. Ch. 366.

*J. Duer and G. Griffin, for the complainants:—The legislative counsel of Florida had no power to pass the law creating a wrecker's court. That law was void, because it did not provide for an appeal from the wrecker's court; and did not give the court any authority to order a sale of the property. An inferior court can take no power by inference. (Jones and Crawford v. Reed, 1 John. Cas. 20. Wells v. Newkirk, 1 John. Cas. 228.) The court was not constituted agreeably to the provisions of the territorial law. It does not appear that the owner selected two jurors. It should affirmatively appear the court had jurisdiction. (Entick v. Carrington, 2 Wil. 282. Stanyon v. Davis, 6 Mod. 224. Lord Covingsby Case, 9 Mod. 95. Kemp v. Kennedy, 5 Cranch, 179. John. Dig. title, Justices of the Peace and Jurisdiction.

The award was invalid on its face. It does not contain a specification of the property as required by the territorial law. This specification is material, to determine what salvage should be allowed, and in what penalty to give a bond in case of an appeal. It does not appear the property was within the jurisdiction of the court at the time the award was made. The wrecker's court exceed their jurisdiction in decreeing the sale of the property which might afterwards be saved from the wreck. The territorial law was not warranted by the act of Congress of March 3, 1823, which was the constitution of the territory. The act of Congress of February 1, 1826, declared the territorial act, creating the wrecker's court, null and void.

R. Sedgwick and Sullivan, for the defendant:—The complainants have no remedy in Chancery. Their remedy is at law; they can bring trover. (Selden v. Hickock, 2 Caines, 166; Jackson v. Anderson, 4 Taun. 24. 1 John. 471. Heath v. Hubbard, 4 East, 121. Bloxam and others v. Hubbard, 5 East, 407. 1 Ves. jun. 416.) The term inferior court does not necessarily imply there ought to be an appeal. The act of Congress of 6th May, 1824, gives an appeal to

*margin:* 1828.
American Ins. Co. v. Fisk.

the Superior Court of Florida. From the expression *in the record, that the jury were summoned according to the law, it may be implied that the owners selected two of the jurors. The specification of the property in the award was sufficient. If not, the complainants should have appealed. The regularity of the proceedings cannot be questioned collaterally, if the wrecker's court had jurisdiction. (*Jones and Crawford* v. *Reed*, 1 John. Cas. 20.) The master of the vessel, who was the agent of the insurers, assented to the award. This assent binds the insurers, even if the wrecker's court had no jurisdiction. The master, as the agent of the insurers, had a right to sell the property. (*U. S. Insurance Co.* v. *Robinson*, 2 Caines, 182. *U. S. Ins. Co.* v. *Scott and Seaman*, 1 John. 111. 1 John. Cas. 378. *Coolidge and another* v. *The Glou. Marine Ins. Co.*, 15 Mass. Rep. 346.)

The Supreme Court of the United States have decided that the territorial act of Florida was constitutional.

THE CHANCELLOR :—An objection is made to the jurisdiction of this court, on the ground that the complainant's remedy is by an action of trover, in a court of law. The accidental obliteration of the marks upon the cotton, which rendered it impossible to ascertain to which of the various owners of the cargo the part saved belonged, together with the complicated rights of the different parties in interest, made the plaintiff's remedy at law at least doubtful, and certainly very difficult. These alone would be sufficient grounds to sustain the jurisdiction of this court. *Weymouth* v. *Boger*, 1 Ves. jun. 416, and per Spencer, J., in *Wrathbone* v. *Warren*, 10 John. Rep. 595.) This case, therefore, turns entirely upon the validity of the sale under the proceedings in the wrecker's court at Key West.

There is nothing in the objection that a part of the property was not within the jurisdiction of the territory of Florida, for it is expressly admitted in the case, that 140 bales of cotton in controversy in this suit is part of the 536

saved from the wreck, and carried into Key West, before the proceedings in the wrecker's court took place. Besides, the act of Congress of 1826, concerning wreckers and wrecked *property, expressly recognizes all the keys and shoals off the coast of Florida as belonging to the United States, and as being within the territorial jurisdiction of Florida. The only question which could raise a doubt in my mind as to the validity of the territorial act of Florida, under which the wrecker's court was organized, is that which relates to the exclusive jurisdiction supposed to be given by the acts of Congress to the superior courts of that territory.

The complainants in this cause filed their bill in the district court of the United States for the South Carolina district, for another parcel of the cotton saved from the wreck of the Point a' Petre, and the same defence was set up as in this case. That court decided against the validity of the sale under the proceedings of the court of Key West. The decision was reversed on appeal to the Circuit Court, and the property was restored to Canter, the claimant. From this last decision, the complainant appealed to the Supreme Court of the United States, and at the last term of that court it was decided that the act of the territorial legislature, erecting the court by whose decree the cargo of the Point a' Petre was sold, was not inconsistent with the constitution and laws of the United States, and was valid, and that the sale made in pursuance of the award of the wrecker's court, changed the property ; and the decree of the Circuit Court, awarding restitution of the property to Canter, was affirmed with costs. This decision disposes of the objection, that the act of Congress of March 3d, 1823, which has been very properly considered by the counsel for the complainants as the constitution of the territory, gave exclusive jurisdiction of salvage and admiralty causes to the superior courts of the territory organized by that act. (*The American Insurance Company et al.* v. *Canter*, 1 Peter's R. 511.) This decision, upon a question as to the construction of an act of

1828.

American
Ins. Co.
v.
Fisk.

[*94]

Congress, and in favor of a right claimed under the constitution and laws of the United States, is binding and conclusive, it being the decision of the court of *dernier* resort on such questions ; and this court is not now at liberty to question the correctness of the construction put upon the act of Congress by the constitutional tribunal, whatever its opinion might have been, if that *decision had not been made.[1]   It also disposes of the objections that the territorial law itself was void, not having provided for any appeal from the wrecker's court, and that there was no authority given to the court to order a sale of the property.

It was suggested on the argument, that the territorial law was not before the Supreme Court of the United States, and therefore these two last questions could not have been examined and decided there.   If such had been the case, I should have no hesitation in declaring both of these objections untenable ; but as the suggestions of the counsel are not supported by the facts before me, I consider it unnecessary to take up time in discussing these questions.   I have looked into the opinion of Judge Lee, in the District Court, and it is evident from that opinion that he had the territorial act before him, and had particularly examined its provisions.   And Chief Justice Marshall, in his opinion, refers to the act by its date and provisions, and says, in express terms, that it is inserted in the record, and that it purports to give the power which has been exercised.   In addition to this, I have made inquiry as to the fact of one of the judges of that court.   There cannot, therefore be any doubt that the territorial act was before them, and that their decision was made in direct reference to its provisions.

Another objection is, that the award does not show that two of the jurors were named by the representative of the owners, agreeably to the third section of the territorial act. It cannot be necessary to inquire whether this may not be implied from the expression in the record, that the jury

[1] *Hicks* v. *Hotchkiss*, 7 John. Ch. 297.

were summoned "in conformity to the wrecking law of the territory," because, in the case agreed upon by the parties in this suit, it is admitted that the notice was given and the jury summoned as directed by the act, and pursuant to all the forms thereby prescribed. The next objection is to the award itself. There can be no doubt, from the concluding sentence, that it was the intention of the jury, that any other portion of the cotton and nails which might be saved from the wreck and brought into Key West, before the day of sale, should also be disposed of at public auction. The wreck being *within the territorial limits of Florida, I am not prepared to say they had not jurisdiction to order that sale. Salvage was awarded only upon that part which was actually brought in, and if the residue was sold, the master, as representing the interest of all concerned, would have been entitled to the proceeds thereof. At all events, it was only an excess of jurisdiction as to that which most probably never was saved from the wreck, and therefore it could only render the award void *pro tanto*. (Per Woodworth, J., 5 Cowen, 737.)

1828.

American
Ins. Co.
v.
Fisk.

[*95]

The last objection which I shall consider is one which appears to be left untouched by the decision of the Supreme Court of the United States, as from the facts before that court it could not arise. The 4th section of the territorial act directs the jury to "make up an award in writing, setting forth a specification of the property, their opinion of the mode whereby the property ought to be disposed of for the benefit of those interested, and the quantum of salvage to be allowed to the salvors," &c. The award itself is now before me, in connection with the rest of the proceedings in the wrecking court.

It is contended by the complainant's counsel, that it contains no specification of the property as required by the territorial act; that in consequence thereof, the proceedings of the court were void, and that the sale to the defendant Fisk, under the order of the court, did not change the property. In examining the proceedings of the court at Key

West, it ought to be borne in mind that Fisk was a *bona fide* purchaser of property at a judicial sale, under the order of a court having jurisdiction of the subject matter, and in a case where public policy, and the interest of owners and underwriters most strongly require that every reasonable encouragement should be holden out to purchasers of that description, in order to prevent a sacrifice of the property. It therefore becomes the duty of this court to sustain the proceedings of the tribunal under whose decision the sale to Fisk took place, so far as that tribunal kept within the limits of its jurisdiction. I have also the authority of a distinguished judge, who now occupies a seat upon the bench of the highest court in the Union, for saying, that

[*96] the presumptions ought to be liberal in *favor of the regularity and competency of such sales, where no doubt is raised as to the fairness and official nature of the transaction. (4 John. R. 41.) The award of the jury, which forms a part of the record of the proceedings at Key West, recites the name of the ship and her master, where from, whence bound, a particular description of her cargo, 891 bales of cotton and 20 casks of nails, the day and place when and where she was stranded, and that a part of the cotton had been saved and brought into Key West by Captain Brown of the schooner Florida, and Captain Johnson of the schooner Jane. It then awards 76 per cent. to the salvors on the amount of property so saved. It appears by the record of the proceedings there, and by the pleadings in this cause, that the cotton had lain in the water, that the deck of the vessel had been burned off before it could be gotten out, and that the original marks, &c., which distinguished the different parcels, were all obliterated. No further specification could therefore be given, unless the jury had overhauled the cotton and counted the bales, or weighed that which had been saved. I am inclined to think the award was in this respect so far a compliance with the territorial law, that it would not have been reversed on appeal for defect of form. But at all events, it

was not such a defect as would make the proceedings void. They were at most only voidable, and, in such cases, a *bona fide* purchaser under a judicial sale is always protected;[1] and the judge himself, whose proceedings have been irregular, is also protected, where he had jurisdiction of the subject matter, if there has been no excess of jurisdiction. (*Warren* v. *Shed*, 10 John. R. 138; *Butler* v. *Potter*, 17 John. R. 145.) The result of this opinion is, that Fisk acquired a perfect right to the 140 bales of cotton under the sale at Key West. The complainant's bill must, therefore, be dismissed with costs.

1830.

N. Y. Printing and Dying Establishment v. Fitch.

[1] A purchaser under a decree cannot be affected by error in the decree, as where sufficient notice to show cause has not been given, or where a decree has been made to sell lands, to satisfy judgment debts, without an account of the personal estate. A purchaser has a right to presume the court has taken the necessary steps to investigate the rights of the parties, and that on that investigation it has properly decided a sale. *Bennett* v. *Hamill*, 2 Sch. & Lef. 566. Nor can he be affected by constructive notice of circumstances of negligence on the part of the assignees conducting the sale. *Borell* v. *Dann*, 2 Hare, 440.