CAROW, executor of JOHN MOWATT v. MOWATT, administratrix of JOHN E. MOWATT, and others.

---

Whenever the right of administration devolves upon an infant, the proper course is, to grant administration to his guardian or some other person *durante minore ætate.* If, through mistake or inadvertence, the office has been conferred upon an infant, it may be revoked by the surrogate.

An infant administrator is responsible for all acts done after coming of age and before revocation. A court of equity regards him as a trustee and compels him so far to account: but not with respect to assets which came to his hands during infancy.

There is not the same strictness or difficulty in suing here upon administration bonds as at law; nor do the same rules apply.

Notwithstanding the R. S., chancery has power to inquire into any alleged *devastavit* by an executor or administrator and to bring all persons before it who may be interested in the question.

A court of equity will no more subject a surety in an administration bond before a devastavit is proved, than a court of law.

Where an administrator, committing a *devastavit,* is dead, equity will, before action establishing it, take cognizance of a suit against his sureties or their representatives and the persons interested in any estate which he may have left, and make them liable for waste or misapplication of assets. But this would not be done in an ordinary case where the administrator is in full life and within the reach of a court of law or the surrogate's court.

A creditor holding a specialty debt due from an intestate and coming against the estate of his administrator, on account of a *devastavit,* can only take equally with such administrator's simple contract creditors; while his sureties must make up the balance.

E. M. died intestate and indebted to the complainant's testator in a money bond. J. E. M. administered on the effects of E. M., gave the usual bond, with sureties, in the surrogate's office; and committed a *devastavit.* J. E. M. died; and a bill was filed by the complainant's testator against the administratrix of J. E. M., one of the sureties and the administratrix of the other sureties, for the purpose of fixing them on the ground of this *devastavit.* The bill was HELD to be, as to parties, well filed; and also, that the complainant would have to come in amongst the simple contract creditors of J. E. M., and the sureties make up the balance.

---

In the month of January, one thousand eight hundred and twenty eight, Elias Mowatt died intestate and indebted to the complainant's testator in the sum of fifteen hundred dol-

lars, which had been secured by a bond bearing date the first day of May one thousand eight hundred and twenty-three.

John E. Mowatt administered upon the estate of Elias Mowatt, under letters of adminstration granted to him by the Surrogate of the city and county of New York on the seventeenth day of January, one thousand eight hundred and twenty-eight. At the time of taking out such letters, he gave the bond required by statute, with Benjamin A. Waldron and James Mowatt as his sureties.

On the fourth day of January, one thousand eight hundred and twenty-nine, John E. Mowatt died intestate, having possessed himself of the personal estate of Elias Mowatt; but without filing an inventory or having paid any debts or accounted for property.

Martha Mowatt, his widow, was appointed administratrix of his estate in the month of March, one thousand eight hundred and twenty-nine. At this time she was a minor—not being twenty-one years of age until the month of June, one thousand eight hundred and twenty-nine.

In the month of March, one thousand eight hundred and thirty, the complainant filed his bill against the said Martha Mowatt, as administratrix of her deceased husband, John E. Mowatt, and also against his sureties. The object of the bill was to establish a *devastavit* by John E. Mowatt, of the property which came to his hands as administrator of Elias Mowatt, and to reach the assets of the former, in order to make good such *devastavit*, and, so that the bond debt might have a preference over simple contract creditors; and also, in case of a deficiency of his estate, to compel the sureties to contribute.

No question was made as to the bond being a subsisting debt against the estate of Elias Mowatt, the obligor. It was admitted that the other debts which he owed were simple contract debts.

By the answer of the defendant, Martha Mowatt, it appeared that the personal estate of Elias Mowatt, which came to the hands of John E. Mowatt, in his capacity of administrator, amounted to about thirteen hundred and eighty dollars; and that the amount of her husband John E. Mowatt's estate which came into her possession, as near as she could as-

1833.

CAROW
v.
MOWATT.

certain, was about two thousand dollars. She stated he died insolvent. Also, that when she took out letters of administration, it was not suggested, nor did it occur to her that she was incompetent to take the office of administratrix by reason of infancy, nor was the Surrogate acquainted with the circumstance of her being under age. She submitted, she was not competent by law to accept of the office and could not bind herself in the bond required by law as administratrix; and being an infant, was not chargeable with waste—should the effects of her husband have been wasted. She also insisted upon the Surrogate's having no authority to grant letters of administration to her while she was an infant; and, consequently, that the letters to her, purporting to be letters of administration, were void in law, and she was not and had not been administratrix.

The answers of the defendants, Anna Maria Waldron, as administratrix of Benjamin A. Waldron, and James Mowatt, insisted that the sureties ought not to be impleaded in this court, because, if there were any liability, the remedy was at law.

After these answers had been put in, the Surrogate of the city and county of New York repealed the letters of administration which had been thus granted to her, and appointed Silvanus Miller, Esquire, administrator in the place of Martha Mowatt.

The latter then filed her cross-bill in the nature of a supplemental bill, setting forth the anterior proceedings, bringing in Mr. Miller as a party, and stating that the latter had taken possession of the articles of personal property which remained of John E. Mowatt's estate, and claimed the funds in her hands. This bill prayed that the letters of administration granted to her might be declared to have been originally null and void, or, if valid, adjudged to have been revoked and administration duly granted to Mr. Miller; and that Miller, as administrator, and the complainant, Carow, might interplead in respect to the sum of four hundred and forty-four dollars remaining in her hands and she be allowed to pay over the same to one or the other of them or be at liberty to bring the same into court and she be discharged from all further liability.

The answer of Isaac Carow to this bill insisted upon her being still accountable as administratrix; and denied the Surrogate's right to revoke the letters which he had granted to Martha Mowatt.

Mr. *J. Antkon,* for Isaac Carow.

Mr. *C. G. Troup,* for the defendant, Martha Mowatt.

Mr. *C. V. S. Kane,* for James Mowatt.

Mr. *Mulock,* for Waldron's administratrix.

*Septem. 9th.* THE VICE-CHANCELLOR:—This case divides itself into two distinct branches: the one as to whether Martha Mowatt is still to be regarded as administratrix of her late husband and accountable for the property which came to his hands as the administrator of Elias Mowatt; and the other, as to the sureties and their liability in a court of equity.

1. By statute, although not at common law, the executors and administrators of an executor or administrator are liable for a *devastavit* or misapplication of assets by the first executor or administrator. The latter becomes personally responsible for any waste or conversion of the property to his own use and the claim for it may be pursued against his representative in a court of equity. Hence, the original bill was properly filed against Martha Mowatt: she being, at the time, of age, holding the office of administratrix and acting therein. On account of the incompetency of infants to bind themselves by bond or to render themselves liable to account for property which may come to their hands during minority, they cannot lawfully be appointed to fill the office of administrator. Whenever the right to administration devolves upon an infant, the proper course is, to grant administration to his guardian or to some other person *durante minore ætate.* If, through mistake or inadvertence, the appointment has been conferred upon an infant, it may be revoked by the surrogate: *Abbott* v. *Abbott,* 2. Phillim. R. 578. But, for all acts done by such person as administrator (in respect to the property of the intestate) after he comes of age and before the revo-

tation, he certainly must be responsible. The appointment may from personal disability have been irregular and void: but after such disability is removed, if he will continue to hold the office and act in the trust, a court of equity, regarding him as a trustee, will compel him to account for his receipts after the time of arriving at full age—although no account will be directed in respect to the assets which came to his hands during infancy: *Hindmarsh* v. *Southgate*, 3. Russ. 324. I do not, however, understand Mrs. Mowatt as claiming exemption merely on account of any act of her administration during minority, and which was only for about the space of three months. She claims to be discharged from the whole: declaring she has given up or is ready to give up and pay over all the property and effects of her husband which came to her hands. Upon complying with this condition there can be no difficulty in making a decree which shall completely exonerate her from all further liability—holding Mr. Miller, the substituted administrator, and who is now before the court, as the proper accounting party: *Parker* v. *Dee*, Finch's R. 123.

Although Mrs. Mowatt has not regularly accounted before the surrogate to the new administrator, yet, from the statement in her answer relative to the property which has come to her hands, it seems unnecessary to refer the matter to a master. The amount is not disputed. Upon payment of the money to Mr. Miller, she can be discharged and dismissed altogether from this suit. As to her claim for costs: I cannot allow her them in the suit where she has filed the cross or supplemental bill. This was done for her own convenience. Even if it were necessary as connected with her rights, still she brought the necessity of it upon herself, by continuing to hold the office of administratrix until the bill in the original suit was exhibited against her. She should either have divested herself of the character earlier and before the necessity of a bill for the purpose arose or have held on and not raised the objection to the validity of her own appointment. In either case the costs would have been avoided. She must bear her own costs of this suit: *Badeau* v. *Rogers*, 2. Paige 209. The utmost I can do is to exempt her personally from the payment of the defendant's

CAROW
v.
MOWATT.

costs. As to her defence in the original suit: she is to be viewed as standing in the situation of an administratrix ready to account, and without any misbehaviour on her part—for none appears—and she is entitled to have her costs paid out of the assets. This will be agreeable to the general rule: *Beames on Costs*, 77.; *Williams on Executors*, 1252.

2. The other branch of this case is, perhaps, more important, since it involves not only a question of jurisdiction, but also a rule of practice in relation to sureties in administration bonds which is not clearly settled.

The form of the bond prescribed by our statute, and the provisions connected with it, are taken from the 22. and 23. Car. II. ch. 10., called, the statute of distributions. By the latter, the bond is taken in the name of the ordinary who grants the administration; and it remains with him. Here, it is made to the people of the State of New York, and is held by the surrogate; and in addition to the English words that the bond shall be valid and pleadable in any court of justice, our statute goes on to say, "in case the bond shall "become forfeited, it shall be lawful for the surrogate who "granted the administration to cause the same to be prose- "cuted in any court of record, at the request of any party "grieved by such forfeiture; and the monies recovered upon "such bond shall be applied towards making good the dama- "ges sustained by the not performing the condition, in such "manner as the surrogate shall, by his sentence or decree, "direct." No such express direction is contained in the English statute; and it may be considered a superfluous provision in ours: since, without it the courts have held it to be the right of a creditor (as well as of the distributee) *ex debito justitiæ* to sue in the courts of law upon an administration bond in the name of the ordinary—although a distinction was once taken between a next of kin and a creditor as to the right of suing upon such a bond: *Greerside* v. *Benson*, 3. Atk. 248.; *Archbishop of Canterbury* v. *House*, Cowp. 140. S. C. Lofft, 622. In proceeding directly at law upon these bonds in an action of debt, the great difficulty is to ascertain how far the condition has been broken and to furnish the proper evidence of a *devastavit*, so as to enable the plaintiff to maintain the action. The forms of pleading in an action of

debt upon such a bond and the mode of proceeding in courts
of law, do not admit of all the collateral inquiries which are
necessary to ascertain precisely the right of the plaintiff and
determine the liability of the sureties.   This liability may be
termed an ultimate one: for, the claim of the creditor or
next of kin must first be established against the administra-
tor and his default in not satisfying the demand be shown—
in other words, that he has wasted or misapplied the assets.
For the purpose of evidence on these points, it is necessary
to call the administrator to an account and obtain either a
sentence, decree or judgment against him.   If a judgment is
recovered and an execution returned unsatisfied, then would
come an action upon the judgment suggesting a *devastavit*,
or some other of the modes of proceeding which the practice
of the common law courts points out for obtaining satisfac-
tion.   And should it prove unavailing, there would be evi-
dence, by matter of record, to show, *prima facie*, at least, the
administration bond forfeited and to entitle the plaintiff to
sue upon it at law.   So, if the administrator be called to ac-
count before the surrogate (as he may be) and found in de-
fault, and a *devastavit* be formally and clearly established,
this will be sufficient and the bond will be ordered to be put
in suit at law against the sureties.   The statute runs to this
effect; and the course pursued by the Ecclesiastical Courts
is the same: *Devey* v. *Edwards*, 3. Addams, E. R. 68.
Courts of law appear to be strict in requiring some one of
these procedures as a pre-requisite to the maintenance of a
suit upon the administration bond.   I need only refer to some
of the most prominent cases: *Jones* v. *Anderson*, 4. Mc.
Cord's R. 113.; *Stewart* v. *Treasurer of Champaign County*,
4. Hammond's Ohio R. 98.; *Gordon* v. *Justices of Frederick*,
1. Munford, 1.; *Inglehart* v. *Stake*, 2. Gill & Johnson, 235.;
*Correy* v. *Williams*, 9. Mass. R. 114.

The People v. Dunlap, 13. J. R. 437., may, perhaps, be
considered as relaxing, in some measure, the rule which other
American decisions profess to establish.   But, however this
may be, and even admitting the necessity of a rigid adher-
ence to the rule in courts of law, grounded upon their inabil-
ity to try all the questions which might become necessary to
make out a case of *devastavit* in an action upon the adminis-

*1833.*

CAROW
*v.*
MOWATT.

1833.

CAROW
v
MOWATT.

tration bond, yet the same difficulty does not exist in a court of equity, nor do the same rules apply. Chancery has a general jurisdiction over executors and administrators in relation to the administration of estates. It regards such persons as trustees; and, upon this ground exercises a power over them in the same manner as over trustees of express trusts, and will compel them to discover and set forth an account of the assets and show how they have been applied. It will also see the implied trust duly executed. In these respects, the jurisdiction might be considered as, in a great degree, concurrent with the law and surrogates courts. (I speak now of the law as it stood anterior to the revision: for it was under the old statue that the administration bond in question was given and the *devastavit* committed). But the remedies in such courts were not sufficiently ample. A court of chancery, upon a bill filed by or in behalf of creditors, next of kin or legatees against an executor or administrator, will direct a general account of the estate and debts, and decree payment and distribution in the regular course of administration; and therefore it has been observed, that the relief afforded here, from being founded upon the relative rights of all the parties in interest, is more comprehensive than could be given in other courts: Jeremy's Eq. Jur. 537, 538. Under our present system, a surrogate possesses more enlarged powers than formerly: but I am not aware of any thing which lessens the jurisdiction of this court. In the exercise of its powers, there is certainly a competency of enquiring into any alleged *devastavit* by an executor or administrator and also the right to bring all persons before it who may be interested in the question. The forms of proceeding and the practice of the court are well adapted to the purposes of such an enquiry; and, while a decree can be made to reach the property and persons of all who may be liable, the relative equities of such parties will be adjusted and enforced. I am not aware of any instance in our own particular court or among the reported decisions of English Chancery, of a bill being filed against the principal and sureties in an administration bond where a *devastavit* is charged, and where it was sought to make the sureties liable. Still, we are not without a precedent of the kind in this country. In Virgi-

ia, the practice of filing such bills in special cases is well established. *Bacheldor* v. *Elliott's Administrators*, 1. Hen. & Munf. 10. was a case of a bill in chancery by a simple contract creditor against the administrator and his sureties. Although the court did not entertain the bill, and held, as a general rule, that the sureties of an executor or administrator could not be sued in equity, any more than at law, until a *devastavit* was fixed upon the principal in a previous suit against him, yet, it said that in special cases where, from some necessity, a creditor was obliged to come into a court of equity, in the first instance, against the principal, it would be proper, in order to prevent circuity of action, to make the sureties parties in the suit. And, in *Clark* v. *Webb*, 2. Hen. & Munf. 8. the same court held, that the sureties of an executor and all other persons concerned in interest against whom a decree could be rendered, ought to be made defendants, with the executor, in a bill filed for a discovery of the assets after a judgment against him and a return of an execution *de bonis testatoris* unsatisfied. But, the case most analagous to the present and in which the question I am considering was more deliberately examined and adjudicated upon (in the Supreme Court of Appeals, Virginia,) is *Spottiswood* v. *Dandridge*, 4. Munf. 289. There, a bill in chancery was filed in favor of legatees against the personal representatives of a deceased executor and the sureties and representatives of deceased sureties of such executor, seeking a discovery of assets and calling for a settlement of the accounts of the deceased executor, charging a variety of acts of mal-administration and that he had died insolvent; and claiming to subject the defendants to the payment of whatever should appear to be due. The defendants demurred to the bill, on the ground of its going for a *devastavit*, the remedy for which, if any, was at law and not in equity. It was overruled by the unanimous opinion of the court. After noticing the form and condition of the bond required from an executor as well as an administrator by the laws of Virginia (and which bond, by the bye, is the same as the one required of an administrator under our law—as well as under the English statute, although taken in the name of the sitting justice or ordinary) and after pointing out its legal effect and

*1833.*

CAROW
*v.*
MOWATT.

9

adverting to the difficulty in the courts of law of establish-ing a *devastavit* in a suit upon the bond against the sureties, which is owing to their forms of proceeding, the learned judge who pronounced the opinion of the court, observed: " But widely different is the mode of proceeding in a court " of equity. Wherever a case occurs, over which it has ju-" risdiction, it may, at once, convene all the parties concerned " in interest; and pending the same suit and by a proceed-" ing forming a part thereof, may ascertain the fact, whether " a *devastavit* has been committed or not, and if it shall ap-" pear by that procedure that a devastavit has been committed, " then, and not before, will it subject the sureties, although " they have all along been held in court, for their own benefit, " to attend to investigations in which they are so materially in-" terested. There is however, no difference in this respect, be-" tween courts of law and courts of equity, except in the forms " of their proceeding, and the ability thereby afforded to courts " of equity to give relief in some cases where courts of law " could not. In deciding the rights of the parties, they pro-" ceed upon principles common to both courts: for a court of " equity will no more subject a surety, before a *devastavit* is " established, than a court of law." For these reasons, they were clearly of opinion that a court of equity might, at the suit of a legatee and without any previous suit having been brought against the executor to convict him of a *devastavit*, convene the sureties or their representatives and the persons interested in any estate which the executor may have left and make them liable for any waste or misapplication of the assets which should be established in the progress of the suit.

I am so well satisfied with the views there expressed and the course of reasoning adopted on the subject, that, if not bound to acknowledge the case as an authority, I am con-tent to use it as a precedent. The circumstance of there being no person legally representing the deceased executor against whom a suit at law could be brought in order to de-termine the matter of a *devastavit* appears to have had some weight with the court in its deciding that chancery will take cognizance of the question in the first instance. A similar difficulty, although, perhaps, not an insuperable one, would be found to exist in the present case as to fixing a *devastavit*

upon John E. Mowatt, the first administrator, through the medium of a suit at law against his personal representative ; and the rule may, with propriety, be applied here, that where the remedy at law is difficult and doubtful, equity will lend its aid. When an executor or administrator is in full life and within the reach of a court of law or a citation from the surrogate, especially under the enlarged jurisdiction which he now possesses, it can hardly become necessary for a creditor, legatee or next of kin to resort to chancery in the first instance for the purpose of ascertaining a *devastavit*, and, at the same time, to make the sureties in an administration bond parties to the suit with a view to fix them. I do not mean to say that, in a plain case of this sort, a court of equity will entertain a bill against the sureties. What I mean is, that under special circumstances like the present, I think they may be brought before the court, in order to have their liability ascertained and payment compelled—so far as it may be necessary to make good the devastavit of their principal. I am aware of several decisions of the chancellors of South Carolina which appear to be at variance with those of Virginia and with the conclusion I have formed. So far as their opinions are reported, the point does not appear to have been much considered ; and, indeed, it arose in cases where there was a complete remedy at law—nor were there any particular circumstances which rendered a bill in chancery against them in any way necessary. These cases are, The Executors of *Bague* v. *Blacklock*, 2. Dessau. 602. ; *Hoell and wife* v. *Blanchard*, 4. Ib. 21. ; *Glenn* v. *Conner*, Harper's Ch. R. 267. The decision in this last case, as reported, seems irreconcilable with the one immediately before it in the same volume : *Maywood* v. *Butler*, page 265. But, at any rate, I am convinced there is enough in the circumstances of the present case to take it out of the general rule which those decisions would appear to establish. Upon the whole, I must decide this bill proper as to all the parties who are made defendants.

Then, as to particular directions in the decree. The complainant was a specialty creditor of Elias Mowatt, and, as such, entitled to a preference over simple contract creditors in the assets which were in the hands of John E. Mowatt,

1833.

CAROW
v.
MOWATT.

1833.

CAROW
v.
MOWATT.

his administrator. The amount of the bond due to the complainant's intestate would more than have absorbed the whole of such assets. Instead of applying the proceeds (thirteen hundred and eighty dollars) in this way, the administrator mingled the money with his own or used it in his business in such a way as not to be traced or identified. He thus became the debtor and personally responsible; and it is now payable out of his assets in the hands of his administrator. Still, as respects him and his estate, it is only a simple contract debt: *Ram on Assets*, 500.; *Charlton* v. *Low*, 3. P. Wms. 330, 331. If there should be a deficiency of assets to satisfy all the debts, this one can only be paid with others of the same class and in the order of administration; and the defendants, Waldron and James Mowatt, will be liable for the balance which may be wanted to make up the amount of assets wasted or misapplied. A reference must be had to take the accounts upon these principles, which will ascertain the actual amount of the *devastavit;* and upon the coming in and confirmation of the report, a proper decree can be made —until then, all further directions are reserved. The order now to be entered may, nevertheless, embrace the discharge of Martha Mowatt and all matters relating to her.