ANDREW E. WILLIAMS, Appellant, v. TERENCE KIER-
NAN and ANNA SCOTT DIAS, Respondents.

*Issue of letters of administration upon the estate of a living person — liability of the
sureties upon the administrator's bond — when an action lies against them by the
party defrauded.*

The defendants were sureties upon a bond given to the people by one Wil-
liams upon the issuing to him of letters of administration upon the
estate of the plaintiff, under the authority of which letters he had taken pos-
session of and converted to his own use property of the plaintiff of the value
of about $2,000. About three months after the letters were issued they were
revoked and annulled by the surrogate, and an action was brought by the
plaintiff against Williams to compel him to account for the property so
received, in which he recovered a judgment for $1,761.25, besides costs, upon
which an execution was afterwards issued and returned unsatisfied. In this
action, brought against the defendants to recover the amount of the former
judgment, they demurred on the ground that the plaintiff had not the legal
capacity to sue, that there was a defect of parties plaintiff and that the com-
plaint did not state facts sufficient to constitute a cause of action.

*Held,* that as the provisions of the statutes, prescribing what should be done before
an action upon the bond could be brought in the name of the people, could not
be complied with by reason of the fact that the person on whose estate the
letters were issued was living, and as for the same reason the provisions of
the statutes providing for the assignment of the bond by the surrogate were
inapplicable, the plaintiff, as the party beneficially interested in the contro-
versy, might, without making the people a party, prosecute the action against
the defendants, as it was by means of their intervening and becoming sureties
upon the bond that Williams obtained the authority to receive and misappro-
priate the plaintiff's property. (Davis, P. J., dissenting.)

Appeal from a judgment, entered upon orders sustaining demur-
rers to the complaint, interposed by the defendants.

The complaint alleged:

1. That on or about the 6th day of April, 1878, one Jeremiah
Williams falsely pretending and alleging that the plaintiff had died
intestate applied to the surrogate of the county of New York for
letters of administration on the estate of the plaintiff.

2. That on the 13th day of April, 1878, the defendants, with said
Jeremiah Williams, made and delivered to said surrogate, in pursu-
ance of the statute, their bond in writing under their hands and
seals and thereby bound themselves to the people of this State in

the penal sum of $3,600, with a condition that if said Jeremiah Williams should faithfully execute the trust reposed in him as administrator of all and singular the goods and chattels and credits of the plaintiff, described in said bond as Andrew E. Williams, deceased, and obey all orders of the surrogate of the county of New York touching the administration of the estate committed to him, then the said obligation to be void, else to remain in full force and virtue.

3. That thereupon, and on the same date, letters of administration on the estate of the plaintiff were issued accordingly to said Jeremiah Williams, by an order duly made by the surrogate aforesaid.

4. That thereupon the said Jeremiah Williams, as such administrator, took possession of a large amount of money or property of the plaintiff, of the value of about $2,000, and converted it to his own use, and has ever since retained the same.

5. That thereafter, and on or about the 23d day of July, 1878, said letters of administration so granted to said Jeremiah Williams were, by order of said surrogate, revoked and annulled.

6. That thereafter, in an action in the Supreme Court of this State between the plaintiff, as plaintiff, and said Jeremiah Williams, as defendant, for an accounting of the property of the plaintiff which came into the possession of the said Jeremiah Williams, judgment in favor of said plaintiff and against said Jeremiah Williams was granted by said court, and upon such accounting it was found that the said Jeremiah Williams was indebted to this plaintiff in the sum of $1,761.25, being the amount of plaintiff's estate retained by him as aforesaid, and final judgment and decree in favor of this plaintiff and against said Jeremiah Williams was accordingly, on October 24, 1878, duly granted in said court for said sum of $1,761.25 as damages and sixty-two dollars and nine cents the costs thereof in said action, amounting in all to $1,823.34, as by a reference to said judgment and decree, and the record of all the proceedings relating thereto and on file in said court will more fully appear.

7. That execution upon said judgment has been duly issued to the proper county and returned wholly unsatisfied, and of plaintiff's own knowledge.

8. That said Jeremiah Williams has totally neglected to pay the

amount of said judgment, or any part thereof, or to return or pay over any part of the money or property of the plaintiff so received by him as such administrator, or to account therefor, and has failed to faithfully execute the trust imposed in him as such administrator, but has been unfaithful thereto to the damage of the plaintiff in the said sum of $1,823.34, with interest from October 24, 1878, and by reason thereof and of the premises an action has accrued to this plaintiff as the real party in interest on said bond given for his protection under the statute against the defendants sureties as aforesaid.

Each of the defendants demurred upon the grounds:

1. That the complaint did not state facts sufficient to constitute a cause of action.

2. That the plaintiff had not legal capacity to sue.

3. That there was a defect of parties plaintiff.

*Alfred B. Cruikshank* and *Albert Cardozo*, for the appellant.

*Lord, Day & Lord*, for the respondents.

DANIELS, J.:

The action is brought upon a bond executed by the defendants, as sureties for Jeremiah Williams, upon the issuing of letters of administration to him upon the estate of the plaintiff. Under the authority of the letters the principal in the bond, as administrator, took possession of property of the plaintiff, amounting in value to the sum of about $2,000, and has since retained and converted it to his own use. About three months after the issuing of the letters of administration they were revoked and annulled by the surrogate, and an action was prosecuted by the plaintiff against the person to whom they had been issued for an accounting concerning the property obtained under the authority of the letters, in which a judgment was recovered for the sum of $1,761.25 besides costs. Execution was issued upon that judgment and afterwards returned wholly unsatisfied. To the complaint setting forth these facts the defendants separately demurred, assigning as causes for the demurrer that the complaint did not state facts sufficient to constitute a cause of action; that the plaintiff had not the legal capacity to sue, and that there was a defect of parties plaintiff.

The bond appears by the complaint to have been given in the name of the people, as it was required to be by the statute prescribing its form and contents (3 R. S. [6th ed.], 82, § 56); and because of that form it is objected that the action can alone be maintained in the name of the people of the State. But the further provisions of the statute, prescribing what shall be done before such an action can be prosecuted in the name of the people, cannot be complied with by reason of the fact that the person on whose estate the letters were issued was living at the time when they were obtained. There was consequently no creditor, legatee or next of kin of the owner of the estate who could require the administrator to account, as that has been provided for and in terms limited by the statute. (Id., 99, § 63.)

No decree consequently could be obtained before the surrogate against the administrator, either for a final settlement of the estate or the payment of a debt, legacy or distributive share, and the facts therefore could not possibly be brought into existence upon which alone the surrogate could cause the bond to be prosecuted. (Id., 125, §§ 19–21.) For that reason no action could be sustained in the name of the people of the State upon the bond, and it was neither necessary nor proper to make the people a party to the action.

It was no part of the substance of the action that it should be brought in the name of the people, for they had no further interest in the controversy than simply to enforce the liability as a trust for the benefit of the parties really entitled to the proceeds of the recovery; and even that has not in imperative terms been required to be done. It might be done in that form for the reason that the people when named in such a bond as the obligee stand in the relation of a trustee to the person or persons intended to be benefited by the obligation. (Code Civil Pro., § 449.) The provision made upon the subject is, however, merely permissive and not of so mandatory a character as to preclude an action from being sustained by the person beneficially interested, when that cannot be done by reason of an inability to comply with the statutory requirements to be observed before an action can be brought by the people. (*Cridler* v. *Curry*, 66 Barb., 336.)

This provision of the Code embodies merely what was in a similar

manner secured by a previously existing rule of practice, and that always allowed the party beneficially interested in the controversy to prosecute the action himself when the trustee either colluded with the adverse party or declined upon a request made to prosecute the action. ( *Weetjen* v. *Vibbard,* 5 Hun, 265; *Memphis* v. *Dean,* 8 Wall., 65, 73.) And the reason upon which these qualifications of the rule requiring the action ordinarily to be prosecuted by the trustee has been placed, would also appear to include a case where the trustee is incapable of maintaining the action by reason of inability to comply with what has been required to be done before it can possibly be instituted by the trustee. In embodying the rule of practice prevailing upon this subject as a provision of the Code, in the terms in which it has been enacted, it could not have been the intention to abrogate these qualifications of it, and for that reason where a trustee either colludes with the other party or refuses, or proves to be incapable of maintaining a proper action, the party interested in obtaining redress by means of it must still be deemed at liberty to institute it in his own name.

From the allegations contained in the complaint the plaintiff has not designated the action either as a suit at law or in equity, and for that reason, if the facts disclosed are sufficient to maintain it at all, he is entitled to have the appropriate relief adjudged in his favor. It is true that he has not complied with the provisions of the law declaratory of the cases in which a bond of this nature may be assigned by the surrogate to the person in whose favor an action may be brought upon it. That assignment could not be made for the reason that the case is not one in which the preceding decree required for that purpose could by any possibility be obtained. (3 R. S. [6th ed.], 329, §§ 17–19.) The plaintiff's inability to comply with these statutory requirements arises out of the circumstance that the existence of the case now presented was not contemplated as a possible contingency requiring to be provided against by law. It originated out of what was probably a bold and palpable fraud, through which the surrogate was induced to issue the letters of administration and receive the bond now in suit. That fraud consisted in the false representation of the plaintiff's decease, and whether the defendants, as sureties in the bond, were confederated with their principal in endeavoring to made the fraud a success, can

make no practical difference in the substantial rights and obligations of the parties. It was by means of their intervention, by becoming sureties for the party prominently guilty of the fraud, that he obtained the authority to receive and misappropriate the plaintiff's property, and the ends of justice as well as the security of property both combine to require that these defendants should not be relieved from the effect of their obligation if it can either in law or equity be substantially enforced against them. Neither the provisions declaratory of the cases in which the people may prosecute a bond of this nature, or in which it may be assigned to the party obtaining a decree in the Surrogate's Court, have been enacted in such terms as to preclude the bond from being otherwise enforced. It has merely been provided that in the cases mentioned in the statute the bond may be prosecuted, or it shall for a like purpose be assigned to the person entitled to enforce the decree. It has neither in form nor effect been anywhere provided or declared that the liabilities created by the terms of the bond shall be no otherwise enforced or redressed. The case has, therefore, been left subject to the broad principle in equity allowing actions to be prosecuted in courts having equitable jurisdiction over controverted matters, where the ends of justice can be obtained in no other way. The deficiencies of the law and its inability to redress the rights of parties originated the authority of courts of equity, and cases of the present nature are as completely within the theory and terms of that authority as any that can possibly be imagined.

The instrument itself was so conditioned, as the statute required it to be, as to include the case now presented against the defendants as sureties in the bond. One of its conditions was that the person receiving the letters of administration should, as such administrator, faithfully execute the trust reposed in him. (3 R. S. [6th ed.], 82, § 56.)

One of these trusts was that he should faithfully preserve and protect the estate committed to his hands by means of the letters of administration issued to him, and that he would devote it to the payment of the debts, and the final distribution of the residue as that has been required by other provisions of the statute. This he wholly failed to do, for he misappropriated and converted to his own use the property received by him and in that manner wholly

failed and omitted, by positive misconduct on his part, to execute the most important trust reposed in him. The condition of this bond for that reason was forfeited, and the contingency arose upon which it was designed and intended by its terms, as well as the language of the statute, that the sureties themselves should become liable to respond and make good the loss occasioned by the misconduct of their principal. A right of action had plainly and clearly arisen within the terms employed for the purpose of expressing the obligation of the defendants, and the fact that the owner of the property still proved to be living in no manner changed the legal aspect or consequences of what had taken place. The trust reposed was that the party receiving the letters of administration should faithfully discharge his duties as the custodian of the property, and that he is shown not to have done. A case has, therefore, arisen for which it was intended and expected the defendants, as his sureties, would become liable, and the only difference, arising out of the circumstance that the party upon whose estate the letters were issued was living, is that he consequently is the person who has the right to complain of this breach of trust. It is obviously of no consequence to the sureties that they may be held accountable to him instead of the creditors, legatees or next of kin, in terms protected by the enactments of the statute. Their liability is neither greater nor less on account of that circumstance; it still remains the same in its character and extent, and it is a liability for the abuse by the administrator of one of the important trusts reposed in him. By the terms of their bond the defendants have become liable to indemnify the party injured by this abuse of trust for the loss produced to him in that manner. The case, as it is presented, discloses a clear right of action to redress a wrong, violating the terms of the defendants' obligation, and as it cannot be prosecuted in the form, or by means of the peculiar course of proceedings prescribed by the statute, the party entitled to indemnity has a right to interpose in his own behalf for that redress which a court of equity, in other cases of inability to secure it at law, has been allowed to administer. It is sufficient for these purposes that the terms of the statute prescribing the proceedings for enforcing the bond have not been made exclusive. They are accordingly to be deemed to leave the courts at liberty to institute and maintain such other

· or different proceedings as may, on account of its own deficiencies, be necessary for securing the ends of substantial justice. Upon this subject the rule is a general one, where a party has a meritorious right of action, which he cannot enforce in the ordinary proceedings of a court of law, that he may appeal to a court of equity for redress (1 Story Eq. Jur. [5th ed.], § 33). In *Brown* v. *Brown* (1 Barb. Ch. R., 189, 217) the rule was stated by the chancellor to be that a court of equity proceeds upon the principle, that whenever there is a right, there ought to be a remedy, either in this or some other tribunal, and where no remedy exists elsewhere, to enforce the right, this court will furnish such remedy whenever it is necessary to prevent a total failure of justice, where the property in controversy, or the person of the wrong doer, is within the jurisdiction and control of the court. (Id., 217; *American Ins. Co.* v. *Fisk*, 1 Paige, 90; *Watson* v. *Sutherland*, 5 Wall, 74.) In the last case it was held that the absence of a plain and adequate remedy at law was the only test of equity jurisdiction. (Id., 79; *Hudson* v. *Reeve*, 1 Barb., 89.) This principle has been considered to be so broad in its application as to justify an action in equity upon the bond of an administrator where it could not be enforced in the manner prescribed for that purpose by the statute, when the case of *Carow* v. *Mowatt* (2 Edw. Ch., 57), was decided. The authorities bearing upon the subject were then very carefully collected and considered, and the conclusion was maintained that the action could be properly prosecuted in equity, and if that can be done in any case not within the provisions made by the statute, it would seem to follow that it can in all, provided the liability created by the bond is not exceeded. A similar subject was considered in *Towner* v. *Tooley* (38 Barb , 598), and while that resulted in a dismissal of the case, because of the absence of necessary parties, it was still deemed capable of being sustained upon the merits and circumstances affecting the controversy itself.

The case now before the court very materially differs from that of *People* v. *Chalmers* (1 Hun, 683; affirmed, 60 N. Y., 154), for there the property assigned to the principal in the bond had been taken out of his hands by means of creditors proceedings, and he was in that manner prevented from administering the trust, for the faithful performance of his conduct in which the bond had been

given, while in the present case the distinguishing circumstance appears that the property remained in the hands of the principal in the bond and was misappropriated by him. If that fact had appeared in the case just referred to no doubt would exist but that the sureties would have been held liable. In the present case the abuse intended to be provided against by the bond has been shown to have taken place. Its condition, as it was literally expressed, has been broken and the bond in that manner forfeited. The plaintiff is the only person injured by the wrong, or who has the right to complain of its perpetration. His complaint is within the terms of the condition of the instrument upon which the action has been brought, for the person upon whose conduct it was made to depend did not faithfully execute the trust reposed in him. No technical difficulty in such a case should be allowed to be interposed to prevent the ends of justice from being substantially attained. It is clearly no unanticipated hardship to the defendants to enforce their obligation against them, to the extent of indemnifying the plaintiff for the loss of his property, for they in terms undertook that measure of responsibility, and if they had not voluntarily assumed this liability their principal who committed the wrong would have had no power to invest himself with the control he acquired over the plaintiff's property. As the case is now presented it has been made out within the terms of the defendants' bond, and the judgment recovered by them should therefore be reversed and judgment ordered upon the demurrers in the plaintiff's favor, with leave to the defendants to answer in the usual time upon payment of costs.

BRADY, J.:

Jeremiah Williams, falsely representing that the plaintiff was dead, procured letters of administration of all and singular the goods, chattels and credits of the latter, and having accomplished this fraud, proceeded to possess himself of such property and appropriated it to his own use. Subsequently, the plaintiff brought an action against him, and, having obtained judgment for such conversion, brings this action against his sureties to recover the amount determined by his judgment.

He claims to be the real party in interest in the bond given by

the principal, on obtaining the letters of administration, by his demand herein for judgment, but the facts are stated in the complaint showing the fraud and its results.

The sureties seek to avoid responsibility on several grounds, one of which is that the plaintiff could not maintain the action in his own name, never having obtained an assignment of it or any authority to sue on it from the surrogate, and the others rest upon the proposition that the proceeding which Jeremiah Williams, as principal, instituted related to a person supposed to be dead, and, as he was not, the surrogate had no power or jurisdiction whatever in the matter.

None of these defenses go to the merits. They are all *quasi* technical, if not absolutely so, and should not be countenanced if by the application of any rule of law or by invoking any principle of justice they can be overcome. As an illustration of the character of these defenses we take the first objection stated, namely, that the bond being to the people, no action can be maintained on it until the surrogate has either assigned the bond or ordered it to be prosecuted. The answer to it is furnished by the respondents, namely, that the surrogate having no jurisdiction in the matter, the assignment of the bond and the order that it be prosecuted would be nullities and absurdities. What is the *status* of the sureties here? It is developed by the fact that they aided and abetted in the fraud practiced, because without their intervention or that of persons occupying similar relations, the scheme could not have been successful. It was their duty to have ascertained whether the plaintiff was dead before they joined in the fraud by consenting to become sureties.

It must be patent on these facts that the sureties could be held to the extent of the value of the property taken through their instrumentality, even though it was in excess of the amount of the bond given. Accessories before the fact, they should be held responsible in any form of action brought which discloses the facts and circumstances which have been stated. We should, as was well said in the kindred case of *Foster* v. *The Commonwealth* (35 Penn., 148–150), treat the administrator as a usurper and his sureties as aiding him in his acts, and not allow them to set up the usurpation as a protection against the accountability for it. In that case it was

claimed that the administrator was improperly appointed, the register, in granting letters of administration, having invaded a positive prohibition of the statute, a view which was substantially conceded to be correct. The court said, in addition to what has been already quoted, that the act of the assembly was intended for the protection of estates against intermeddlers and not for the protection of the intermeddlers themselves, and they could not use it to destroy the estate.

The complaint in this action refers to the bond only in the demand for judgment, and thus forms no substantial part of it. The plaintiff is entitled to any judgment, notwithstanding this demand, which the courts on the facts stated should grant, and there is enough, as already suggested, to hold the defendants as tortfeasors for their instrumentality in signing the bond and giving to their principal an apparent right to seize the plaintiff's property, and under color of which he did take it.

This is not an action in which the court should be astute in calling into requisition any technical rules for the protection of the defendants. If the issues to be created present the merits properly, that is all that should be required. The defendants should be protected so far as to require, if they deny it, proof that their principal took and disposed of the property alleged to have been converted by him.

The case is novel and extraordinary in its features; but, assuming the plaintiff's story to be true, the fraud committed is a bold one, unparalleled, if, indeed, it did not amount to larceny, and demands prompt redress, without reference to the form in which it is administered.

For these reasons we think that the judgment should be reversed, and the defendants held responsible for their participation in the fraud charged against the principal, and which they aided and abetted by executing the bond signed by them.

DAVIS, P. J. (dissenting):

I am not able to concur in the views of this case expressed by my brethren. In my opinion the judgment of the court below should be affirmed.

The defendants were mere sureties on the bond. For aught that

appears (and it must therefore be assumed) they were entirely ignorant and innocent of the fraud of their principal, and as much so as the surrogate himself who issued the letters.

The argument that they must be held as participants in the fraud of their principal, because without the giving of the bond he could not have obtained the property would be equally as potent against the surrogate, for without his letters the fraud could not have been successful. It is, in my judgment, entitled to no weight whatever. As innocent parties they, the defendants, executed a bond, the office and purposes of which are clearly defined and declared by statute. Their obligations and liabilities are precisely the same as though the several provisions of the statute had been embodied in the bond. Their rights as sureties are *strictissimi juris*. They were bound, and only bound, to the performance by their principal of his duties and liabilities *as administrator* towards all persons and creditors interested in his administration of the plaintiff's estate.

But that administration was arrested. The letters were vacated by the surrogate upon a ground which rendered void all the proceedings in his court, and subjected the administrator to his liabilities to the plaintiff as a personal wrong-doer who had obtained the plaintiff's property by a criminal fraud. There never existed any liability whatever on the part of the wrong-doer to the plaintiff as his administrator. The plaintiff could not sue him in his representative capacity, but only for his individual fraud and wrong in obtaining possession of the plaintiff's property. But the defendants by their bond became sureties only for the performance of the principal's duties and liabilities *as an administrator* to the extent and in the mode pointed out by statute, and under which their undertaking as sureties was to be enforced only as prescribed by statute.

To change the undertaking of such sureties into a liability for the gross personal fraud of their principal, which he had accomplished through certain legal proceedings, in the course of which he had made use of a bond obtained in fraud also, of the sureties themselves, is something which I think neither equity nor law will permit.

What remedy the plaintiff might have against these defendants if he could show that they were co-conspirators and participators in the fraud is another question. The remedy would not, however, be upon the bond, but by a more efficient action for conspiracy and

fraud. The only question here is whether the bond can be perverted from the purposes for which it was given, in such form as to make it the basis of a recovery for wrongs perpetrated by the principal in his individual, and altogether outside of his representative capacity. I think not.

Judgment reversed.